IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| LENETTA MARIE WILLIS o/b/o M.A.M.S., Plaintiff, <br><br> v. <br><br> COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, Defendant. | § § § § § § § § § § § CIVIL ACTION NO. 4:21-CV-170-P |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

*Pro-se* plaintiff Lenetta Marie Willis ("Willis") filed this action, on behalf of her minor daughter, M.A.M.S., pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying M.A.M.S's claim for supplemental security income ("SSI") under Title II of the Social Security Act ("SSA"). In a decision dated January 16, 2013, M.A.M.S. was found disabled as of January 14, 2013. (Transcript ("Tr.") at 15; *see* Tr. 52-58, 140-48.) After a disability review, the SSA, on November 21, 2016, found that M.A.M.S. was no longer disabled, effective January 31, 2017. (Tr. 15; *see* Tr. 59-69, 72-76.) This determination was upheld on reconsideration. (Tr. 15; *see* Tr. 84-

99.) M.A.M.S. then requested a hearing before an administrative law judge ("ALJ"). (Tr. 15; *see* Tr. 100-104.) On January 30, 2020, a hearing was held before the ALJ, and, on October 26, 2020, the ALJ found that M.A.M.S.'s disability ended on January 31, 2017 and that M.A.M.S. had not become disabled again since that date. (Tr. 15-51.) Willis then filed a written request for review of the ALJ's decision to the Appeals Council. (Tr. 1.) On December 17, 2020, the Appeals Council denied M.A.M.S.'s request, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-4.)

## II. STANDARD OF REVIEW

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollis v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

If a claimant is entitled to SSI for disability benefits as a disabled child, the claimant's continued entitlement to those benefits must be reviewed periodically. *See* 20 C.F.R. § 416.994a(a). For a disabled claimant who has not obtained the age of 18, the Commissioner follows a three-step evaluation process to determine if the disability continues. *See* 20 C.F.R. § 416.994a(b). At Step One, the ALJ must determine if there has been "medical improvement"[1] in the claimant's impairment(s), which was present at the time of the most recent favorable decision that the claimant was disabled or continued to be disabled. 20 C.F.R. § 416.994a(b)(1).[2] If there has been no medical improvement, the ALJ will find that the claimant's disability continues, unless one of the exceptions to medical improvement applies. 20 CFR 416.994a(b)(1). If the ALJ finds that there has been medical improvement, the ALJ will proceed to Step Two. 20 CFR 416.994a(b)(1).

At Step Two, an ALJ is tasked with determining if the impairment(s) that he considered at the time of the CPD still meet or equal the severity of the listed impairment(s) that such impairment(s) met or equaled on the CPD date. *See* 20 C.F.R. § 416.994a(b)(2). If the impairment(s) still meets or equals the severity of that listed impairment as it was written at that time, the ALJ will find the claimant is still disabled, unless one of the exceptions to the medical improvement applies. *Id.* If the claimant's CPD impairment no longer meets or equals a listing, the ALJ will proceed to the next step. *Id.*

---

[1] "Medical improvement" is "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 416.994a(c). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with [the claimant's] impairment(s)." *Id.*

[2] The "most recent favorable medical decision is the latest final determination or decision involving a consideration of the medical evidence and whether [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 416.994a(c)(1). This decision is also known as the "comparison point decision" or "CPD." *See Martinez v. Saul*, No. 7:19-cv-00040-O-BP, 2020 WL 5928443, at *1 (N.D. Tex. Apr. 3, 2020).

At Step Three, an ALJ evaluates whether the claimant is currently disabled under the three-step analysis set forth in 20 C.F.R. § 416.924(c) and (d) for determining disability for children. 20 C.F.R. § 416.994a(b)(3). First, the ALJ will determine whether the claimant's impairment(s) or combination of impairments are severe. 20 C.F.R. § 416.994a(b)(3)(i); *see* 20 C.F.R. § 416.924(c). If they are not, the ALJ will find that the disability has ended. *Id.* Second, if the impairments are severe, the ALJ will determine whether the impairments meet or medically equal the severity of any listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1 ("the Listing"). 20 C.F.R. § 416.994a(b)(3)(iii); *see* 20 C.F.R. 416.924(d). If they do, the ALJ will find that the disability continues. *Id.* Third, if the impairment(s) do not meet or medically equal the severity of any listed impairment, the ALJ will determine whether the impairment(s) functionally equal one of the sections in the Listing. 20 C.F.R. § 416.994a(b)(3)(ii) and (iii); *see* 20 C.F.R. 416.924(d). If so, the Commissioner will find that the disability continues, and, if not, the Commissioner will find that the disability has ended. 20 C.F.R. § 416.994a(b)(3)(iii).

In determining whether an impairment or combination of impairments functionally equals one of the sections in the Listing, the ALJ must assess the claimant's functioning in six functional domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). The ALJ, when making the assessment, must compare how appropriately, effectively, and independently the claimant performs in each domain with children of the same age who do not have impairments. 20 C.F.R. § 416.926a(b). For a claimant's impairment or combination of impairments to functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked"[3]

---

[3] A claimant has a "marked" limitation in a domain when the claimant's impairment or combination of impairments "interferes seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R.

4

limitations in two domains or an "extreme"[4] limitation in one domain. 20 C.F.R. § 416.926a(d). In assessing whether the claimant has "marked" or "extreme" limitations, the ALJ must consider the functional limitations from all medically determinable impairments, including impairments which are not severe. 20 C.F.R. § 416.926a(a).

"Even though the burden of proving disability is on the claimant, 'once evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remained unchanged.'" *Smith v. Comm'r of Soc. Sec.*,

---

§ 416.926a(e)(2). The claimant's ability to independently initiate, sustain, or complete activities may be seriously interfered with when the impairment or combination of impairments limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. *Id.* Additionally, 20 C.F.R. § 416.994a(e)(2) explains that a "marked" limitation also means, *inter alia*, the following:

(1) A limitation that is more than moderate but less than extreme;

(2) The equivalent of functioning that would be expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean; or

(3) A valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test design to measure ability or functioning in that domain, and their day-to-day functioning in domain-related activities is consistent with that score.

*Id.*

[4] A claimant has an "extreme" limitation in a domain when the claimant's impairment or combination of impairments "interferes very seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3). The claimant's ability to independently initiate, sustain, or complete activities may be very seriously interfered with when the impairment or combination of impairments limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. *Id.* Additionally, 20 C.F.R. § 416.994a(e)(3) explains that an "extreme" limitation also means, *inter alia*, the following:

(1) A limitation that is more than marked;

(2) The equivalent of functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean; or

(3) A valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and their day-to-day functioning in domain-related activities is consistent with that score.

*Id.*

No. 3:16CV212-RP, 2017 WL 2292795, at *2 (N.D. Miss. May 24, 2017) (quoting *Buckley v. Heckler*, 739 F.2d 1047, 1049)). "In other words, once benefits have been awarded, the claimant is afforded a 'presumption of continuing disability that requires the Secretary to provide evidence' that the claimant's condition has improved." *Smith*, 2017 WL 2292795, at *2 (quoting *Taylor v. Heckler*, 742 F.2d 253, 255 (5th Cir. 1984)). The Commissioner must also weigh the facts that formed the basis for the prior determination of disability with the Commissioner's new evidence and any additional evidence submitted by the claimant. *Smith*, 2017 WL 2292795, at *2. In termination proceedings, the ultimate burden of proof lies with the Secretary. *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991).

### III. ISSUES

In her brief, Willis presents the following issue: Whether the additional evidence submitted to this Court constitutes "new and material" evidence that requires the Court to remand this case.[5] (Plaintiff's Brief ("Pl.'s Br.") at 10.)

### IV. ALJ DECISION

In his October 26, 2020 decision, the ALJ found that the most favorable medical decision finding that M.A.M.S. was disabled was the decision dated January 16, 2013, which is known as the CPD. (Tr. 18.) The ALJ also determined that, at the time of the CPD, M.A.M.S. had the medically determinable impairment of "low birth weight" and that such impairment was found to have medically equaled section 100.04 of the Listing. (*Id.*)

At Step One, the ALJ found that medical improvement occurred as of January 31, 2017. (Tr. 18.) Next, the ALJ stated that the medical evidence established that, since January 31, 2017, M.A.M.S. had the following medically determinable impairments: "asthma, attention deficit

---

[5] While Willis did not specifically set forth an issue, she stated, "This is my brief for the case" and attached over two hundred documents to her brief.

hyperactivity disorder, and learning disorder." (Tr. 19.) At the next step, the ALJ found that, since January 31, 2017, M.A.M.S. had not had an impairment or combination of impairments that met or equaled a section in the Listing. (Tr. 19-20.) The ALJ also found that, since January 31, 2017, M.A.M.S. had not had an impairment or combination of impairments that functionally equaled any of the sections in the Listing. (Tr. 20-28.) Specifically, the ALJ found that, since January 31, 2017, M.A.M.S. had: (1) no limitation in acquiring and using information; (2) no limitation in attending and completing tasks; (3) no limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) no limitation in her ability to care for herself; (6) and less than a marked limitation in health and physical well-being. (Tr. at 22-28.) Consequently, the ALJ concluded that M.A.M.S.'s disability ended on January 31, 2017 and she had not become disabled again since that date. (Tr. 28.)

## V. DISCUSSION

### A. New and Material Evidence

Willis attached 232 pages of documents to her brief. (*See* Pl.'s Br. at 12-244.) Thus, the issue is whether any of these documents constitute new and material evidence that requires Willis' case to be remanded.

"When new evidence becomes available after the Secretary's decision and there is reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citing 42 U.S.C. § 405(g)); *Latham v. Shalala*, 36 F.3d 483, 483 (5th Cir. 1994)). The Court does not issue factual findings on new medical evidence but is to determine whether to remand for the consideration of newly presented evidence. *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989). "To justify a remand, 42 U.S.C. § 405(g) requires that the evidence is 'new'

and 'material' as well as a showing of 'good cause' for failing to provide this evidence at the original proceedings." *Ripley*, 67 F.3d at 555. To be new, evidence must not be merely cumulative of the evidence already in the administrative record. *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). For evidence to be material, it must relate to the time period for which disability benefits were denied and there must be a reasonable probability that the new evidence would change the outcome of the Commissioner's decision. *Ripley*, 67 F.3d at 555; *see Sullivan*, 884 F.2d at 803.

A review of many of the documents attached to Willis' brief indicates that such documents are not new as they can also be found in the Administrative Record. Moreover, as to those documents that cannot be found in the Administrative Record, the majority of these documents are cumulative of the evidence in the record or do not contain evidence that has a reasonable probability of changing the outcome of the ALJ's decision. However, there are two documents that need to be carefully analyzed to determine whether they constitute "new and material" evidence requiring a remand: (1) A Fort Worth Independent School District Full and Individual Evaluation ("FIE Report"), dated February 8, 2021 (Pl.'s Br. at 171-183) and (2) A Fort Worth Independent School District Admission, Review, and Dismissal/Individualized Education Program (ARD/IEP") Committee Report ("Committee Report"), dated February 9, 2021 (Pl.'s Br. at 188-213.) Both of these documents were created shortly after both the ALJ's decision, which is dated October 26, 2020, and the Appeal Council's denial of review, which is dated December 17, 2020.

As set forth above, the ALJ, in his decision, found that M.A.M.S., since January 31, 2017, suffered from several severe impairments, including a learning disorder. (Tr. 19.) The ALJ was aware of M.A.M.S.'s learning disorder and determined that it did not meet or medically equal one

8

of the listed impairments. (Tr. 19-20.) Additionally, the ALJ determined, after reviewing the evidence and evaluating the impairment against the six functional domains discussed above, that M.A.M.S.'s learning disorder did not functionally equal any of the listings. (Tr. 20-28.) Specifically, the ALJ noted that the record supported that M.A.M.S. had no limitation in five domains and had less than marked limitation in the sixth. (Tr. 20-28.) In making these determinations, the ALJ repeatedly stated that M.A.M.S. had "fair to good writing skills" and that "[h]er parents reported that she started elementary school and was doing well." (Tr. 23-27.)

A review of the information in the FIE Report and the Committee Report indicates that M.A.M.S. is eligible for special education services due to an "intellectual disability" and that she "has demonstrated weaknesses in the areas of communication, functional academics, health and safety, self-direction and social skills." (*See, e.g.*, FIE Report at 11 (Pl.'s Br. at 181); Committee Report at 4-5 (Pl.'s Br. at 191-92.) In addition, the FIE Report shows that M.A.M.S. "obtained extremely low scores in the area[s] of Math and Writing" and "below average scores in the area of reading and a low score in the area of decoding." (FIE Report at 11 (Pl.'s Br. at 181); *see* FIE Report at 4 (Pl.'s Br. at 173).) Testing further indicates that M.A.M.S.'s cognitive abilities "are not within normal limits in all areas" and that she exhibits adaptive behavior deficits in the areas of communication, functional academic, health, self-direction, and leisure. (FIE Report at 11 (Pl.'s Br. at 181).) In addition, the FIE report states:

> The student does demonstrate significantly subaverage general intellectual functioning as measured by a standardized, individually administered test of cognitive ability in which the overall test score is at least two standard deviations below the mean, when taking into consideration the standard error of measurement of the test.
>
> . . . .
>
> [M.A.M.S.'s] FCI of 70 falls within the Intellectually Disabled range and she has deficits in at least two adaptive areas. She meets the criteria as a student

with an Intellectual Disability. It is expected that [M.A.M.S.] will have a slow rate of learning.

(FIE Report at 11 (Pl.'s Br. at 181).)

After reviewing the FIE Report and the Committee Report regarding M.A.M.S.'s learning disability, the Court finds that both reports are new as they are not cumulative of other evidence in the record. *See Pierre,* 884 F.2d at 803 ("In order to justify a remand, the evidence must first be 'new,' and not merely cumulative of what is already in the record."). In addition, much of the evidence in these reports appears to directly contradict many of the ALJ's findings as to M.A.M.S.'s severe learning disability. Moreover, both reports are material as they are dated just a few months after the ALJ's and Appeals Councils' decisions, relate to the time period for which benefits were denied,[6] and show a reasonable probability that the new evidence would have affected the outcome of the Commissioner's decision. *See Monjaras v. Colvin*, No. H-12-2689, 2013 WL 5945642, at *3-4 (S.D. Tex. 2013). Thus, remand is required for consideration of these two newly submitted reports.

## RECOMMENDATION

It is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further administrative proceedings consistent with these proposed findings, conclusions, and recommendation.

---

[6] The Court notes that there are two documents in the Administrative Record that appear to have been submitted to the S.S.A. on December 14, 2020, three days before the date of the Appeals Council's denial of Willis' request for review of the ALJ's October 26, 2020 decision. (Tr. 5.) The first document, a letter dated November 18, 2020 from Lindsey Price, the School Counselor at Benbrook Elementary School, states that the meeting to discuss M.A.M.S.'s "current academic levels" as well as to address Willis' "request for an evaluation [of M.A.M.S.] for a specific learning disability in reading" was rescheduled to Wednesday, December 2, 2020 via Zoom. (Tr. 5.) The second document, dated December 7, 2020, is titled "Notice of Full and Individual Initial/RE-Evaluation" and states that the Fort Worth Independent School District wants to do a full evaluation of M.A.M.S "to address academic concerns" as "RTI data shows [M.A.M.S.] is not making progress in the general education setting." (Tr. 6; *see* Tr. 6-9.) Based on these two documents, it is clear that FIE Report and Committee Report were performed as a result of the December 2, 2020 meeting and relate to the time period for which M.A.M.S.'s benefits were denied.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

### ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **February 7, 2022** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED January 24, 2022.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE